Mr. Bader for the appellant, Ms. Townsend for the medicare and Mr. Tenney for the appellate. May it please the Court, I'm Hans Bader, counsel for the appellant. The issue in this case is whether agency records maintained by an agency director are beyond the reach of FOIA,  and the agency records are not in the FOIA. Simply because they're in a non-governmental email account, the Court below held that they were, and so doing, it created a loophole for officials to evade FOIA while conducting agency business. It found that refusal to produce such records is not a withholding under FOIA because their storage on a non-governmental server isn't beyond the agency's control. That ruling is wrong under any plausible interpretation of the word control. One plausible interpretation is that control has the same meaning under both the agency records and withholding prongs of the three-part test for liability announced by the Supreme Court in Kissinger. If that's true, then the Court below erred by failing to apply the fact-specific four-part test for control announced by this Court in Berkow. Another plausible interpretation is presented by the media coalition, AMICI, that the standard for possession, custody, or control in Kissinger mirrors the civil discovery standard for determining possession, custody, or control. If so, then the District Court erred by failing to apply that standard. Either way, the District Court's ruling that an agency head can place agency records outside the reach of FOIA just by storing them in a non-official email account is contrary to law. What would you have the agency do in a situation if, by assumption, the records are outside their physical control, dominion and control, because they're on a separate entity server? What does your theory of FOIA require the agency to do in that situation? Well, I think the agency should do what it does when employees have emails on their personal work computer, which is ask them to produce them. So it's an ask. The bottom line of your position is that they have to ask. Right. And, you know, the fact that they're not in the agency's official record-keeping system doesn't put them beyond the reach of FOIA. I mean, J. Edgar Hoover's secret files were not in the agency's official record-keeping system, and they were unknown to... They're in the agency. That's true. But it illustrates that there's not a distinction based on practical ability in this case. And under this Court's decision in McGehee v. C.I.A., the question is custody or control, not custody. And under the Supreme Court's Kissinger decision, it says six times, it says possession or control. So we don't have to show a position... Suppose the union head who has the private server has left the government service before the request is made. Well, that's... What do they do then? Well, that's a very different situation in this case. I mean, it may be... I know it is. I know it is. But under agency theory... Right. But under agency theory, he is the alter ego of the agency. He's not just his employee... No, but if he's left, that's like Kissinger. He may be gone, and you may not be able to show the control, whether or not they were previously agency records, right? That might be, but in this case, he's still the director. Well, we understand the differences, but my colleague was asking about a hypothetical. So I answered the hypothetical. If he's gone, then it's a different situation, right? Very different. But here, he's still the director, and under agency theory, he's the agency's alter ego. So if he leaves while the case is pending, does that change? Does that just adjust the case? So if he left tomorrow... I mean, things that happen after the FOIA request is received are treated differently. For example, under this Court's decision in Chambers, where the documents were destroyed... After the FOIA request is received. In Chambers, this Court treated it as a violation, even though the records were destroyed after the request because the agency had improperly destroyed the records. So there was still jurisdiction, even though the agency no longer had possession. In Kissinger, when the FOIA request was received, was Kissinger still Secretary of State? Yes, he was, but there he had deeded the paper records to a third party, which held them under a claim of right. The only way they could get them back in that case was through a retrieval lawsuit, and that time-consuming and speculative prospect did not give the agency control over the records, much less the ability to produce them within FOIA's short deadline. Here, by contrast, OSTP's director can instantly access these emails using his office computer, and they can be produced without the need for any retrieval action. But what does that have to do with whether the agency has to ask? Because I thought your bottom line is what the agency needs to do is to ask, and then if the relevant timeline is the point in time at which the FOIA request is filed, and in Kissinger, he was still Secretary of State at the time in which the FOIA request was filed, then wouldn't the Supreme Court have required that the agency ask? Well, they did ask in Kissinger. It was rebuffed twice. The archivist asked. Whereas here, the agency's never apparently asked him, so it's distinguishable on that basis. But again, in Kissinger, they didn't have present control over the records because they'd have to bring a retrieval lawsuit. Here, all that has to happen is that the OSTP's director just has to go and instantly access the emails using his office computer. So, I mean, implicit in your argument is this Court's failure was not to consider constructive control. That's right. I mean, this Court's decision in Burka lays down a constructive control test, and under the four-part test in Burka, there is control in this case, and we know from what's in the Joint Appendix that he used this email account. Well, that would be to be determined. Yes, Your Honor. The trial court didn't even want to decide whether this was an agency record. Absolutely, Your Honor. So, I mean, if you're right, we couldn't do anything more than send it back and say, you've got the wrong theory here. You've got to figure out whether there's an agency record and then whether there's control in possession or control. That's what I'm understanding your theory to be. Well, absolutely. It's a question, we think, for a factual one for summary judgment, not one to be decided in the pleading stage based on the four factors in Burka. But you're asking for remand for those determinations. That is, the District Court was wrong in saying, I'm not going to decide whether it's an agency record and then decide whether or not there's constructive control or possession. I think that's right. If we're talking about agency records. I think that's right. I mean, the amicus does make a plausible argument that the standard is instead one's mere civil discovery where it might be within his control as a matter of law. But either way, the District Court needs to be It referred to the civil discovery, didn't it? Yes, it referred to rules 34 and 45 and the court's historic equity power and it analogized FOIA obligations to discovery obligations. And under discovery case law, federal courts have held that documents within the control of an entity's officers are also within the entity's own control on cases like Puerto Rico Telephone versus San Juan Cable. But in the discovery context, I take it that the agency sometimes would have to institute legal proceedings or face the possibility of discovery sanctions. Legal proceedings in order to obtain the employee's documents or face the possibility of discovery sanctions. I mean, in the cases that I've read, I didn't see that potentiality presented. It just seemed like the agencies have that ability to obtain the records of their officers. And of course, they have a strong incentive to do so, given things like adverse inferences that can be drawn against them for failing to produce such evidence in their possession. And here, the agency's never argued that I don't think OSTP has not claimed that its director would refuse to produce these records if a court ordered it to do so and such a claim would be implausible. Moreover, courts have the power to enjoin individual officials like OSTP's director to comply with FOIA. Can I just ask one clarification question about Kissinger? So if the theory is that there's an agency notion in which the entity controls the individual or that there's sufficient association between the two, in Kissinger, did the agency ask for the documents to be returned or was it the archivist? I just don't remember. I thought the agency did twice, but I've forgotten exactly how many different entities asked him for the records. But he was certainly asked and rebuffed the request twice. And he was gone from the agency by the police by the time of the second request. And he was essentially out the door when the request came in. He was an agent. So here, Director Holdren remains the director. He is the agency's alter ego under agency theory. But you said the relevant, we're getting back on this, you said the relevant time was when the request was made. And by the time the request was made in Kissinger, he was still Secretary of State. That is the most relevant time. But again, this case is distinguishable because he is still the director now. I mean, the practical control of the function is to consider practical ability rather than just agency theory. The agency has much more leverage here to obtain these documents because he remains the agency's director. But in any event, it's the agency, not the plaintiff, that bears the burden on any factual issues about whether the records were covered by FOIA. As the Supreme Court emphasized in tax analysts, the burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not agency records or have not been improperly withheld. And here, the court below made no findings on those relevant factors like the BRCA factors, nor is there evidence on them to support its ruling. So accordingly, its ruling should be reversed. The court below seemed to view our... Part of the ruling was that some of what they were seeking were not agency records. So the court had to make that determination. I don't know how we don't do that here. And with respect to the others, they were no longer in the possession or control of the government at the time when the court was looking at it. Yes, Your Honor. No matter who had possession or control when the FOIA thing request was initially made, the court, as I understand it, was saying the agency does not have possession or control now of the other set of documents. That's right. With respect to one of the three sets of records, they said it was not agency records at all because I believe that was from his time as National Security Advisor, whereas the others were deemed to be agency records, but for other reasons were beyond the FOIA. Beyond the control or possession of the agency. Whereas here, the trial judge specifically declined to find that they were not agency records, and I believe the examples in the joint appendix are very clearly agency records, like the example at Joint Appendix 153 to 158 where he sends material that is redacted under deliberative process privilege from his Woods Hole Research Center email account. I mean, the very fact that they redact it pursuant to privilege shows that it is an inter- or intra-agency memorandum that under this Court's decision in Vaughan v. Rosen directly relates to agency policy making. So I think it's very clear that they're agency records is a matter of law and to the extent that the same factors under BRCA, the same control... Well, my guess is if you're right, the motion you get is a remand for the District Court to take this under consideration because we have no determination of whether or not they're agency records. We're not going to do a facial review as if it's summary judgment now, right? Right. I mean, those factual issues are for summary judgment, not the pleading stage. In this case, it's dismissed at the pleading stage without evidence on those factors, but frankly, it wasn't even the appropriate time or place to consider the facts underlying those four BRCA factors because those are for summary judgment. You look at the cases that go in favor of the agencies, they're on summary judgment. But I thought what the District Court's rationale was was that your own allegations say that the documents that you're seeking access to, the virtual documents that you're seeking access to, are beyond the physical custody and control of the agency. But is this court... Right. Is this court explained in Forsham v. Califano, in footnote 19, the fact that documents are outside the possession of the agency doesn't place them beyond the reach of FOIA because if they did, agencies could just avoid FOIA by avoiding possessing documents. So if they're having someone else store them, like an independent contractor, they're still within the scope of FOIA. And the difference between the Federal Records Act and FOIA is that FOIA, according to Judge Edwards' opinion... Right, but it has to be right, of course, that just because the documents physically aren't located on your premises, that can't be enough. Because if you still have the ability to physically go get the documents, as you would with an independent contractor, then you can be required to turn them over. That's a different question from the distinction between physical control and legal control. The idea that you could exert pressure on somebody to turn them over because they're your employee, now you may or may not be right about that. But I don't think our prior decisions established that the ability to exert pressure necessarily means they're sufficiently within your control that you're obligated to turn them over. I mean, I think this is an easier case, because like in Valencia-Luceno v. U.S. Coast Guard, they had to go 600 miles away to a non-agency storage facility to get them. And that was not deemed an undue burden. And in Burke itself, they had to go to the premises of an independent contractor, and still those were deemed to be within the agency's control. I think this is a much easier case because you can just instantaneously access these emails... It seems rather plain that the storage contractor is holding them as the agent of the agency. That may not be quite as plain when we're talking about it being on a virtual document on a private server of an agency employee. Now, I understand it's the head of a unit, so maybe that might make the tipping difference, but suppose it weren't. Suppose it were somebody further down the chain who had it on a private entity. But I think that cuts in our favor, because in a paper records case like Kissinger, you really can't have two people who simultaneously control them or readily access them. Whereas electronic documents, many people can have control over them simultaneously. Would you have a lawsuit, and I don't want to beat the same horse after it died, but would you have a lawsuit if the person in question had already left the agency? If he had left the agency before the FOIA request in question, that would be a very different case. But he remains the director. He was the director at the time of our FOIA request. Let's forget about that distinction, or I go back to he quit the day before the FOIA request. Would you have a case? That's a very different case. It's a hypothetical. I know that. You keep telling me my hypothetical is hypothetical. I'm not absolutely certain, because there's a footnote 9 of the Kissinger decision. They suggest that some action is taken deliberately just to avoid a FOIA request, that that could nonetheless be within the reach of FOIA, even if it otherwise wouldn't. It's a kind of Delphic footnote, and I don't know how it would apply in that situation where they're deliberately doing that just to frustrate FOIA, unlike Kissinger itself, where the State Department legal advisor had blessed Kissinger's transfer of the document. So it was held under apparently a good faith claim of right by the library. Just to be clear, and this is also a hypothetical. I know it's not this case, but if the person leaves after the FOIA request is filed, but before any court enters any different, because then there's no practical ability to control the person. They just voluntarily left the agency. I think it should still be decided the same way, but I admit it's distinguishable. But I think under cases like this Court's decision in Chambers versus Department of Interior, and the District Court decision in Judicial Watch versus Department of Commerce, jurisdiction isn't key to its current possession, and even if there's destruction or removal of the documents, which may make it hard for the agency to get them, nevertheless, there can be FOIA or Privacy Act violations based on such conduct. So I think that there would still potentially be a FOIA claim, but it's a very different case than this one. Thank you. Yeah. May it please the Court. My name is Katie Townsend, and I'm counsel for the Coalition of 27 Media Organizations led by the Reporters Committee for Freedom of the Press that filed an amicus brief in this matter. I'd like to emphasize the procedural posture of this case. The District Court dismissed the FOIA claims at issue here at the pleading stage, concluded that records maintained by the head of an agency on a non-governmental email account are, as a matter of law, outside the reach of FOIA. That's regardless of whether they meet the definition of agency records under FOIA, and regardless of whether they were placed on a non-governmental email account in a deliberate effort to evade FOIA. Treating as the District Court did the mere location of records on a non-governmental email account as dispositive of the three-part jurisdictional test announced by the Supreme Court in Kissinger directly conflicts with Kissinger as well as the decisions of this Court. If countenanced by this Court, the District Court's decision will have a disastrous effect on government transparency. A bright-line rule that carves out agency records maintained on non-governmental email accounts from the scope of FOIA will cut off press and public access to scores of important government records. It will also encourage government officials who seek to shield their conduct from public view to use non-governmental email accounts to conduct the public's business. Such a result cannot be reconciled with FOIA's purpose, which is to... Let me make sure I understand. Are you suggesting, as a premise of your argument, that you have to be able to show there was an intention to avoid FOIA? Does that matter? No, Your Honor. Well, you stated that starting out. Well, an intention... Where there is an intention to avoid FOIA, I would have thought your argument was it doesn't matter whether they're intending to avoid FOIA. The question is whether their agency records properly within the possession or control of the government. And that's right, Your Honor, and I think that that goes... Well, I'll start by saying that the Kissinger case... In other words, is your nasty motive part of your theory? Nasty motive just makes it a better-looking case, but is that really part of your theory? It's not, Your Honor, but this Court has found and Kissinger left the door open in footnote 9 of that opinion and in the Chamber's decision referred to by Mr. Bader, this Court has indicated that a deliberate intent to evade FOIA in fact, Judge Edwards, in your opinion, in the McGehee case, you suggested that if an agency sets up a system that's deliberately designed to evade FOIA, that can constitute a way of holding... I understand. That's one kind of case, but you're not... Are you suggesting that's it? I thought the start of your argument... I thought your argument was that that doesn't matter. It matters in the sense that it's a better-looking case if we have a bad motive, but if we have agency records that meet the test of control, constructive control, that that's enough. I thought that was your argument. That's right, Your Honor. It does not matter. I think the District Court's focus on withholding a loan in a way that swallowed the agency records from the agency records analysis was incorrect, and by carving out that... Well, there was no analysis of whether it was an agency record, which is perplexing, but... I agree completely, Your Honor. The agency records portion, the agency records prong of the Kissinger analysis is the driver, as it should be. The question of whether the records being sought are agency records, the type of documents that FOIA is supposed to reach, is the most important question. That's the critical inquiry. The withholding inquiry really is a practical question. If they're agency records, can the agency produce them, release them in response to a FOIA request? And then the Supreme Court said in Kissinger that the practical answer to that apparently was no. And Kissinger is distinguishable entirely on its facts. It's an extremely unique set of facts, and to respond to some of the questions that you posed to Mr. Bader earlier, in Kissinger, Dr. Kissinger at the time, he was at the Secretary of State, when the two requests, there were three requests, when the two requests, one by the Military Audit Project, one by the Reporters Committee, came in, that were decided on the withholding prong. There was a prior request that was not decided on the withholding prong. When those requests came in, those documents, Dr. Kissinger had already deeded them, he believed legally, to the Library of Congress based on an opinion by the State Department legal advisor, had already deeded them and transferred not only physical possession, but legal right to those documents to the Library of Congress. It was at that point that the Supreme Court said that because the Library of Congress was, quote, holding those documents under a claim of right, that there was no need to pursue legal action, to pursue litigation in an attempt to clear up that question or to reobtain legal right over those documents in order to comply with FOIA requests. The highly unusual set of rules that the Court holds itself is quite narrow. The Court holds expressly that withholding does not mean instituting a retrieval action. So before the documents went over to the Library of Congress they were held at the New York estate of Nelson Rockefeller. That's right, a private estate. So at that point your theory would be that the case would have turned out completely differently. That's correct. So it wasn't until the documents were actually sort of ostensibly legally deeded or legally provided under a contract to the Library of Congress that the dynamic really changed. And in that situation, when the documents are with the estate of Nelson Rockefeller, what is the agency's obligation under FOIA, in your view? The agency has control, it still has control at that point, over its own records. And it's not a matter of control over the individual per se. It's a matter of control over its own records. And that's why the agency records analysis is so important. At that point they would have the same obligation that they would have in this situation. Which is practically what do they do? There's documents that are hypothesis agency documents. The individual has taken them and put them in the estate of Nelson Rockefeller. Somebody comes in and says, I'd like to see those documents. Practically what is the agency obligated to do? The agency tells its employee to bring those documents back, or in the case of electronic records, to comply with what is now law under the Federal Records Act since 2014, which is to send copies or make copies of those documents, of those emails, and put them on a governmental account to make them more accessible. The employee says no. Let's just deal with the physical world just to make it easy. So we're dealing with physical documents. I took them, I put them over in the estate of Nelson Rockefeller. The agency says, those are agency documents, bring those back. The employee says no. Then what? In the ordinary course, I think that's a really unusual or unlikely scenario. I think it's unlikely that an agency employee is going to say, I'm violating federal law, I'm violating the policy of this agency, I'm violating the regulations of this agency, but I'm still going to do it and I refuse to provide these agency records to you. I think in that situation, the agency is still, at that point, at least obligated to, I mean at that point there is a dispute between the employee and the agency over whether or not the documents can be provided. And maybe that presents a closer question. But at some point, I'm sorry Ron. Suppose you can get copies of all of what are purportedly agency records on the private server. Copies have been made and the agency has copies of them. Does that satisfy you? And I think that that is the idea behind the amendments to the Federal Records Act. If employees, I think this only becomes an issue if employees are not complying with that provision in the Federal Records Act. So if employees are in fact complying with that and if they are copying their, if they're using a non-governmental email account, they're copying their official government email account, the same substance is there. Does that satisfy, just to answer my question directly, does that satisfy the FOIA request? If the agency says the record is really unclear as to what was being rolled out and what was not being rolled out and I couldn't get a handle on that, if their rollout includes copies of all the material off of the private server that are agency records, and they say here, does that satisfy the FOIA request? It should satisfy the FOIA request, Your Honor. So what we would need to do then is remand it for findings on that and the related subjects of it being an agency record? I think the case needs to be remanded. But wait, we need to know what your theories are. I mean, if we're saying remand and continue the rollout, if what you mean by rollout is you're pulling everything off the private server that is an agency record, you're saying that satisfies us, that's all we need? It should. And I think on a motion for summary judgment, if the party wishes to challenge the sufficiency of the search based on you didn't adequately search a non-governmental email account, which is how district courts have been dealing with these issues on the FOIA request, that satisfies your request. Your answer is yes. I understand all the fights you can have along the way, but assuming there aren't any fights, and you got everything that was an agency record by a copy of what was on the server. In other words, you can't otherwise go in and probe around the private server just because it would be fun to do it. They've asserted, and you can't prove otherwise that we pulled everything off the private server that is an agency record. Here it is. You're done, right? That's correct. And that could be done through an affidavit at the summary judgment stage by the official. Is that not what the government was doing? What was the rollout? What were they rolling out? Weren't they rolling that kind of stuff out? No? Yes? I'll ask them. And I'm not sure I'm in the best position to respond to those factual questions, Your Honor. No, but I think you can at least respond to this, even though you're an amicus and not the party, which is that I thought the way that this arose is that the government was producing what the government had, and what the government has on its server is at least some of the stuff that's on the private server because it was copied to the government server. But the theory behind this shoot is that, well, we don't know that it's everything. There may be stuff on the private server that's also an agency record, but that was never copied to the government server. And then that's where the dispute arises, because the government says, well, we can't get that stuff. We only have the stuff that we were copied on. And the requester is saying, no, the government has to take steps to make sure that stuff is turned over from the private server. And I think that is the dispute. The dispute is is there a gap between what's on the nongovernmental account and what's on the government servers? And I think, again, that is an issue that is properly addressed on summary judgment under a sort of a sufficiency of a search analysis and can be dealt with through affidavits. If Dr. Holdren submits an affidavit that says I've copied every document that is every record that is work-related is on the government server, maybe that resolves. I would think that that would resolve this. Would it also be resolved on the pleadings if the director had deeded everything on the private server over to the Library of Congress? And I think that would depend on the timing of those actions. And I think that does go to Judge Edwards' question earlier about motive. Again, this Court has said in Chambers and in I believe Safeguard Services, Inc., the SEC, that if the agency is no longer in the possession of a document for a reason that is not itself suspect, then the agency is not improperly withholding that document and the Court will not order the agency to take further action in order to produce it. So there can be other factual issues. The Court and Kissinger and this Court have not delineated the full contours of what a withholding might be. Thank you, Your Honor. Thank you. May it please the Court, I just want to start by clarifying the facts of Kissinger because there were some questions that arose about that and I think the answers illustrate how close this case is to Kissinger. In Kissinger, the FOIA requests came in when Kissinger was still the Secretary of State. Kissinger had sent the materials in question to the Library of Congress, but access to those materials was permitted by anybody who had the written permission from Kissinger himself. So Kissinger himself was still the Secretary of State and himself had access to all of the materials that were at issue in the case and could provide access to any third party by providing written permission. How do we know that? It says so in the Supreme Court's opinion. If you look at page 141 of the Supreme Court's opinion, it says public access would begin 25 years after the transfer. Until that time, access is restricted to, one, employees of the Library of Congress, two, persons who have written permission of Mr. Kissinger. Yeah, but they're essentially saying the agency no longer had possession or control. That's all. It's not interesting that he deeded it away. Well, I mean... Dr. Holdren hasn't deeded anything away, as far as I know. Well, I guess what I'm saying is that is a complete answer to their assertion that if the head of an agency has access to the material... That can't be... Yeah, I understand, but that's not what the heart of this case is about. We're talking about whether they're agency records and whether they're within the possession or control of the agency. And your view of control is really strange in your brief. It's a really very narrow, bizarre kind of, in my own view, observation in light of our constructive control theories and how you measure control. And I don't know how the district court couldn't decide whether this was an agency record. That's utterly implausible. Kissinger did that. Kissinger, for the two sets of documents that had been transferred before the FOIA request was sent in, the Supreme Court did not decide whether they were agency records. It assumed, for sake of argument, that they were agency records and said that even if they were agency records and even if they were wrongfully removed from the agency in violation of the Federal Records Act, plaintiffs still got no relief under the FOIA. That's what they said, and that's the same thing that the district court did in this case. Because no possession or control. Right. Okay, so that's the question here. We don't, that question is not being answered. Merely because they're on a private server doesn't answer the question as to whether or not there's possession or control of the agency. Because you have notions of constructive control that are in play. This is someone who's working at the agency, still there, the director, some stuff, I'm giving, I'm painting a picture that's not necessarily perfectly accurate with the facts here. Some materials that may be allegedly are agency records go on a private server. Others are being put on the agency server. That's not the picture that Kissinger was talking about. And so they didn't have to address the constructive control. We're talking about whether the agency in that situation can say, hey, you're here, you're working here, some of those materials on that server are our materials given to us so that we can respond to the FOIA request. As I read Kissinger, the court wouldn't have hesitated one second in saying, absolutely, you have to give it to them. Well, just to be clear, at the time the FOIA request was submitted in Kissinger, Kissinger was still there, still worked there, was the head of the agency. I understand, but I'm going to the possession and control part of it. But the possession of control, I believe the other side agrees, and Kissinger stated, is assessed at the time that the FOIA request is made to the agency. And that's what the Supreme Court did in Kissinger. And if the plaintiffs are going to win this case, they need a way to distinguish Kissinger. And so one thing they've said is, well, Dr. Holdren's still there. Well, at the time that the FOIA request was sent to the agency in Kissinger, Kissinger was still there. Kissinger had sent the documents in question, we're talking about physical documents there, somewhere else, to somebody else, and he had a paper that said he had control to let people come in to see them. But as far as where the documents were, he didn't have them anymore. So why haven't they already found a way to distinguish him? Why don't you move on to something else? Well, the materials here were never in the agency's files. There's no allegation that they were ever, they are now, or were ever in the agency's files. Before you move on to something else, just one point of clarification for me is, do you see a distinction between a situation in which the physical documents are with another entity, physically located with another entity, but the person who put them there, apparently, based on what Kissinger's opinion says, could always go get the documents, and one in which virtual documents are on a private server, but the person who put them there, i.e. the progenitor of the email, could always get their own emails and give them back to the agency. Do you see a distinction between those two? I mean, I'm not sure what the basis for the distinction would be. You know, there are some circumstances in which, you know, as was described in terms of sort of a federal record center somewhere where they're not physically at the agency, but that it's still the agency's to do with what they please. Just another factual clarification from Kissinger, a question was posed earlier whether the Department of State itself had asked Kissinger to return the documents, and the answer to that question, as appears from the Supreme Court's opinion, is no. The archivist had asked, and Justice Stevens' dissent in footnote 8, he says, the Secretary of State never asked, and we don't have reason to believe on this record that if the Department of State had never asked, if the Department of State had asked Kissinger to return the documents, we don't have reason to believe that the request would have been refused. Now, just to sort of go back to plaintiff's theory here, plaintiff's theory here is that they have to ask for the documents, and the mere fact that you have to ask is evidence that you don't already have control. You have to make a request. Just a moment, just a moment. Now, I suppose it was a real document instead of a virtual one, and he had it at his house, the employee did, at his house, and the agency says, hey, bring back that file that you had, we need to turn it over for you. Are you saying that they can, that that takes it out of the agency category because you took the document home? And because they had to ask for it? Because they had to ask for it, I mean. That makes no sense. It's not necessary. Because they have to ask for it. You're saying we got a court order. The court has determined that some of what you have are agency records, based on the law, and we want them back. And you're saying, well, if they have to ask, that's the whole theory, and that's what the district court's essentially saying, which makes no sense. Judge Sentel's example is exactly right. It's in a box, take it off the file. And you're saying because the agency has to ask the employee, bring the records back here, that they lose. That makes a lot of sense. The case in which there is a document that is in the agency's files is temporarily taken by an employee, but not in a manner that... Because he meant to take it home for good. He wasn't going to bring it back. He said, hell, I don't want this hanging around the office. People might get it under for you. Well, that gets a lot closer to Kissinger because it, because if... Kissinger had treated away the materials, and apparently lawfully, at least no one was claiming otherwise, he had apparently was in a position to give away what he gave away. And so that's... It's not helpful here. We're talking about a situation where the government is not claiming that Dr. Holdren is in a position, or has the authority, to give away agency materials. And I don't think Dr. Holdren would suggest that either. So what? The case really is what Judge Sentell is saying. A box is at his home. And you're arguing, well, if they have to ask him to bring the box back, then... Well, let's just be clear about what they're asking for. What they're asking for is a search of his non-governmental email account. Of his private box at home. Yes. He bought the box. Yes, they're asking for someone to get that box and confirm, because there's good reason to believe there's some agency records in there, confirm that they are or not. And if there are some, then we're now in the fire. I mean, there are federal... The Supreme Court in Kissinger talked about the fact that there is a federal statute that addresses a circumstance in which agency records, or things that should be agency records, have escaped the federal agency, either because they were wrongfully taken away in the case of Kissinger. And the question was, how and does the federal agency need to go about getting those materials back? And what the court was very, very clear about in Kissinger was the way to get those materials back is through the Federal Records Act. And that the FOIA does not require the agency to obtain documents that the agency is not already exercising control. And the statutory... He's not exercising control in FOIA because the Supreme Court accepted the assertion that he acted on a claim of right to give it away. So they didn't have... They may have been formally agency records, but they gave it away permissibly. And so the control they said was with the library, not with the agency. Well, in this circumstance, the server is held by... I mean, the allegations of the complaint say, this is paragraph 23 of the complaint, say, correctly, this email server is under the control of a private entity. It is inaccessible by the government. It's like Judge Sentel's box. It's in my daughter's house, and I don't have a key. Is that an answer? I mean, it really would depend on the factual circumstances. That's a lot closer if you have materials that were the agency's materials. If somebody stole a box of agency records... It's not an accusation. It's in my daughter's house. And yes, there is a plausible claim. There are agency records there. And your argument keeps coming back to you can't make the government ask for it. That's silly. At least it makes no sense to me. I don't get that. Two more points from Kissinger that might help to clarify our position here. One is, when you're talking about asking for materials that are not... The agency doesn't have possession. It hasn't already exercised control over. The court was quite clear in Kissinger that they said the FOIA is about the agency disclosing records that it already has, and it does not require the agency to obtain additional materials. And then the statutory term that's at issue here is withhold. And the court said, you can't read the word hold out of withhold. That was almost a quote from Kissinger. And they said the point is, if the agency holds the document, the agency has it. Now, if it's escaped the agency's possession... If these were created on-premises, on the email device, whatever computer the person's using, created on-premises while he's on government time doing a government job, why doesn't that fall within the description that you're providing there for what constitutes... Well, I guess two inches to that. Just factually, there's no assertion that that's the case. Well, we don't have a factual... We don't have a motion to dismiss. But they didn't allege in their complaint that... We need to remand it to develop the facts here. No, but just legally, in answer to your question, the question isn't, was this created on government time? That was true in Kissinger, too. The question is whether the materials right now, or not right now, but at the time of the FOIA request, which is... We're dealing with allegations that government records are on this private server. Those allegations appear to concern the making of those email transfers by somebody on government time and probably government-premises. And the district court may have... I don't know if the client can decide whether they're agency records. And in the context of this case, it makes no sense. I don't know how we could decide this case without at least knowing that as a starting point. Well, the question that the district court was trying to answer is the question that the Supreme Court answered in Kissinger, which is, is the agency withholding these materials? And so the question is not... And you're saying, and you keep saying, if they have to ask for the materials, then the plaintiff can't win on the FOIA. What I'm getting at is, the question is whether the agency has them. It's not whether they were created in the agency. But can I ask this question about, because it seems to me that at least a fair amount would turn on whether there's a meaningful distinction between the fact that in Kissinger, the physical document was given to the Library of Congress for Kissinger to get the document back, and a situation in which Kissinger keeps the document at home, which of course he can get back because he has it. So is there a difference between a situation in which Kissinger himself puts the document in his house and keeps it, and a situation in which instead of keeping it in his house, he gives it to the Library of Congress, subject to his ability to get it back? And I think your view is that there's no meaningful distinction between those two. But one question that perhaps points that up is, is it the same thing to have the ability to give people access to a document that you've turned over to the Library of Congress, by which I assume it means you can go look at it, as opposed to actually having the ability to go retrieve the document itself? I guess it seems to me that the thing that makes the question about whether he's taken it to his house a harder one relates to whether that constitutes an action that takes it out of the control of the agency. Because if I, for example, bring an agency document home overnight and then bring it back the next day, it hasn't eluded the control because the agency has exercised control of it consistently, and I haven't done anything inconsistent with the agency still having control of it. If Kissinger said, there's a box of documents, I'm taking it away from the agency, I'm never giving it back, and I'm locking it up in my house, you might have a Federal Records Act problem with that, and the agency could maybe address that under the Federal Records Act. But to say under the FOIA the federal agency has an obligation to search materials that it does not have the ability, because it isn't exercising control over them right now... It does have, you're assuming an answer to the question that's not necessarily correct. It does have the ability to say, with the agency, you're not bringing the box back. And I don't get why you're not getting that. You're assuming the worst, that the employees are going to say, go fly a kite. Most of the rest of us in the room assume that if the agency says to someone working for the agency, those are our records, bring them home, they'll bring them home. Well, that's why I clarified that in Kissinger itself, the court did not say, you have to ask for the materials, and in Justice Stevens' dissent, he said, the agency never asked for the materials, and the majority apparently didn't consider that relevant. And I'm also pointing out that there is a difference. The question is not whether the agency upon request could obtain documents. The question is whether the agency is withholding documents. That's the statutory term. And withholding doesn't mean that there's something that you could get if you asked for it. Withholding means that you have it and you're not giving it up. That is what the lawsuit's about. If we assume that the answer to that question is what you want it to be, then maybe you win. If we assume it's not what you want it to be, then maybe you don't win. But you're reasoning in a circle here. You're starting out with the proposition that the agency can't be made to turn over things it doesn't have in its physical control. Why? Because the agency can't be made to turn over things it doesn't have in its physical control. You're not getting very far, though. I'm not just saying physical control. You are, really. If they can ask for it and get it back, then it's in their constructive control. It's in their control if they can ask for it and get it back. It absolutely is. And you keep assuming, no, that's not plausible. It is plausible. To write an opinion the way you're describing it would really be an embarrassment. Given the world in which we live, to say that the hypotheticals that you're running through and essentially saying, no, you can't get access to it, I don't want no part of that. I don't know how it comes out in the end, but I can't imagine writing an opinion on a motion to dismiss no finding on the agent, whether it's an agency or rec or not, and write an opinion that's what you're talking about. A lot of people would be laughing at us. Well, let me just be, because the key part of Kissinger is not, we're not asking this court to hold that if an employee has documents that should be in the agency's files and aren't, then there's nothing to be done about it. What Kissinger was about was whether the way to do that was through the FOIA or whether the agency has to take action under the Federal Records Act. Or the agency has to take action. People want and have the right to certain kinds of information in the possession or control of the agency. The Records Act's a different question. But the point is, if the reason that an employee would give the materials back that the employee has taken away is that the employee has an obligation under the Federal Records Act, then that is what was going on in Kissinger. Is there a private right of action under the Records Act? There's not. And FOIA has given the greatest, broadest statutory standing of any statute I know of that any citizen, any reporters committee that wants documents that are government records can come within the act. So I don't see why the fact that the agency would have a private release under the Records Act has anything to do with what we're doing today. Well, in Kissinger, the reason we know there's no private right of action under the Federal Records Act is that the Supreme Court held that in Kissinger. And then they said in Kissinger, well, can entities who believe that there have been materials that have been removed from the agency in violation of the Federal Records Act, can they get the agency to try to get those documents back under the FOIA? And the answer the Court gave in Kissinger was no. On the flex of that case, they also talked about civil discovery rules, too. I'm just, it's not making sense what you're saying. I mean, Kissinger just doesn't get you where you're trying to go. Well, just to be clear about what the majority's opinion said about discovery rules, they said if you issue a subpoena to somebody and that person doesn't have the materials, then that person does not have an obligation to go out and get the materials. What does happen in the case in which we know, we're talking about a physical document, and we know that the physical document is located at the residence of an agency employee, and a FOIA request is lodged, and then the agency responds by saying, we don't have the document. What's the government's view on whether the agency wins in that situation? You'd have to add a few facts to the hypothetical about the circumstances in which it's at a private residence. We don't know, because it's at a motion to dismiss stage. So all we know is that there's the allegations made in the complaint that the individual employee has the document in their residence, and it's a plausible allegation. Suppose there's a newspaper article that reports that. So it's a plausible allegation. So we know that. We take that to be true for purposes of the motion to dismiss stage. And the government responds by saying, look at the allegations in the complaint. The allegations in the complaint themselves tell us that the document is not within our physical agency confines. It's located at our employee's residence. Therefore, we reject the FOIA request because we're not withholding it. I think that would be a closer case, because the question there is whether something has been done to take it out of the employee has done something. I'm assuming you're talking about a record removed from the agency. It's just a piece of paper. All we know is that it's at the employee's house because the complaint alleges that. And the other thing we know is that the agency says we're not withholding it because we don't have the document. I guess the factual question that comes up there is, has the employee taken it home and said, you know, I'm taking this out of the agency's control. This is mine now, in which case it's more like the Kissinger case. No motive. I'm curious to hear your answer, too. No motive. It's a piece of paper that no one in the world would doubt is an agency record. It's at the employee's home. There's a plausible allegation that that's where it is. There's no claim that the employee is doing anything devious. And the agency comes back with the answer that the CEO gave is, well, we can't possibly be seen to be withholding anything because we don't have it. It's at the guy's house. Again, we would need to know why it's at his house and why he hasn't brought it back to the agency. Do we know that it's Blading State? Even if we did need to know that, which is rather questionable, does it matter at the Blading State? Again, I'm saying this is a closer case. I'm not sure exactly what the plaintiff would allege. Well, I guess one way to ask the question is, which way does it cut that we don't know? In other words, if we don't know, if literally that's the only allegation in the complaint and then the government, the other fact we know is that the government responds by saying we're not withholding it, then, I mean, you may be right or I'm willing to assume that there's some fertile ground to be mined by looking to see what the motivation is, but literally we just don't know. So who wins? Do you think in that situation the government wins because it just says your own allegation in the complaint says it's at somebody's residence, not in my physical confines? We're not withholding it. We win? Again, I think that's harder, and I guess just to go to the distinction here to just clarify what I think matters about this. What we're talking about here is an email account housed on a non-governmental server, and what they're asking to do is search the email account, and the notion in the case of a single document that an employee takes home, the notion that the employee, the notion that that represents an act of taking that document out of the control of the agency as opposed to everybody understanding that even though it is physically in my house, it's still the agency's document. The employee gets that. The agency gets that. It's going to come back. That would be sort of one scenario. What we're talking about here, this is a non-governmental email server. The position of the plaintiffs... The man's house is non-governmental, incidentally, in the hypothetical. It's a non-governmental house, and that's where the material is. Just to take their hypothetical and analogize it perfectly to this case, then their allegation is not there's a document, and we want the agency to turn over the document. We know that at some point, this person took agency records home, so we want the agency to search this man's house just in case there are other agency records there because we think that it's under the control of the agency. That's the analogy because here what they're saying is the agency should search the non-governmental email account of a federal employee. It is extraordinary for plaintiffs to be... No, no, no. The claim would be we know there's this document. We're alleging there is this document. We're alleging that it's an agency record. It seems to be undisputed, and our best information is that it's at this person's home. Well, to equate... It doesn't matter. What they're essentially saying is we don't care whether it's at his home or anywhere else. We're not at the adequacy of search stage yet. Not there yet. I mean, that is... Yeah, it is a perfect example, and it's one that's not helpful to you. No, but if you look at the complaint here, the complaint here is the exact opposite of that. The complaint here doesn't say there is a document. It doesn't say we're looking for this document, and we don't care where it is. It says the only thing we care... Employer claims don't have to know all of what's there. You've changed FOIA. You don't have to say I know there are these specific documents there, and I want them. You say I want the agency records relating to a whatever. Right, but that's not what this FOIA request says. It's not asking for materials on a particular topic. It's not asking for particular documents. It's saying all we want to do, anything that the government already has on its email servers, that's not what we're interested in. But I think what's germane is that your response to the FOIA request is that we're not withholding because the complaint alleges that the stuff is located on a private server. We can't just go into the private server if it's not our server, which just seems to be the same response as saying we can't go into a private home. That's not our home. And at that level of generality, if that is a good analogy to say, okay, we have evidence that an employee brought records home sometimes. He always brought them back because the allegations of this complaint don't suggest that there are any, don't allege that there are any materials that were on the private server that weren't properly recorded in the government files, which the district court noted. So the allegation of the complaint is this employee brought materials home at some point, and therefore under the FOIA, the agency has to search his house. And you could say whether that's a reasonable search or not, but before you even get to that, the question is... He just has to produce the document. You're assuming all these horrible scenarios. He wants the document. And it's no answer for the agency to say, but it's at somebody's home. You flipped it. I mean, you're not, well, we're not getting... We're close to being interpreted with a view to disclosure, not concealment. There's plenty of authority on that, and you seem to be interpreting it toward the concealment side, the way you're asking us to interpret it. No, because it's not a question of concealment. This is a question of the... Not disclosure. You're adding a meaning to withhold that is beyond anything that I could ever imagine a court might say. I mean, there's one way to look at the statute, which is the way that the Supreme Court laid it out in Kissinger was that there's three aspects to withholding, and then one other aspect is improper. It has to be improper. So one way to view it is to say that if the government can't get home under withholding, maybe you can bake in some of the factual considerations that you're asking about into improper and say, in a situation in which the employee just steadfastly refuses to turn it over, if it's a physical document, we don't... The government doesn't have a means of going into the house and getting it, but it's not improper. They have to do some other stuff. They have to ask. They have to do some things to render it a withholding that's non-improper. But you're wanting to win at the threshold stage of whether it's a withholding at all. And on whether it's a withholding at all, if there's no meaningful distinction between a situation in which all you know is that... Or all that's plausibly alleged is that the physical document is located at somebody's house and that the virtual document is located on a private server, then it seems a tougher situation. I mean, I guess if... I mean, the problem with if all you know is that it's at somebody's house is that, in that scenario, it's quite plausible, indeed likely, that it's temporarily at the person's house that the agent... That may be plausible or likely. We don't know that. I mean, I guess the reason I keep having difficulty with this hypothetical is that it is a much more difficult case. You want to fight the hypothetical. You don't like the results you get with the hypothetical. No, I just want to clarify the hypothetical, but my point is that... You don't get to do that. You have to take your... Well, I mean, the question was, in this scenario, does FOIA cover it or not? And you could talk about what the pleading standards would be, but just in terms of if there is a document at somebody's home, if the question is, does the agency have control of that for purposes of FOIA? I don't know that I can give you a categorical answer to that. I do think that if you had evidence that there were materials that were at somebody's home and we knew that that person was never going to give them back to the agency, and that the agency hadn't said, you can take this home, but everybody understands this is coming back to us, then that's sort of one scenario. But a private email server, just the fact of it, there is no allegation here, there could be no plausible allegation, and it's just not true, as a matter of fact, that there's any expectation that any materials, either related to OSTP or otherwise, that are on the email server are sort of the agency's materials, that they're all going to come back. If he resigned tomorrow, nobody assumes that these materials are going to all go, if there are any, which we don't know, are all going to go back to the agency. And that just makes it very different. It would be nice if we knew some of those things, wouldn't it? Well, I mean... Therefore, shouldn't we remand and find out some of those things? Well, the only thing that's in the complaint... I mean, the complaint, it strikes me as quite implausible that you would presume that somebody after leaving government service... Well, I'm sure that strikes you as unbelievable. Well, but the only allegations we have in the complaint on the subject, because we are on a motion to dismiss, the allegation we have in the complaint is that the materials have been placed outside the control of the federal agency and are inaccessible to the federal government. So that's what we've got on the complaint. So that is the opposite of what they would need to show. Is that the words of the complaint? Yeah, almost exactly. I'll read the words of the complaint exactly so that there can be no confusion. This practice of creating work-related... I'm on J9, paragraph 23. This practice of creating work-related correspondence, which absent the required copying of an employee's office, is solely under the control of private parties and generally unknown to and inaccessible by the federal government. Yeah, so? That doesn't mean it's not under government control if it's an agency record. I mean, solely under the control of private parties, I would submit does mean it's not under government control. You referred to the Kissinger opinion's references to civil procedure. Didn't that explicitly leave open the question of how the subpoena would operate if there had been a removal of something from the controls? I'm sorry, I didn't catch the question. You used the example a while ago of the Kissinger opinion's references to the subpoena power. Didn't the Kissinger Supreme Court expressly leave open the question of how the subpoena power would operate if something had been taken away for the purpose of taking it away outside the subpoena power? The court left open the question specifically with respect to the FOIA of whether if a record was removed in response to a FOIA request, there's no allegation of that kind here. Does there have to be an allegation of that particular kind to raise the question of what happens if it's taken away? Justice Stevens in the dissent was a little more explicit about that question being left open, but the majority didn't come back at him on that. What Justice Stevens said was the majority seems to acknowledge that if there were a pending FOIA request and the materials were taken away in an effort to evade that, then the answer might be different. You want us to make the assumption that there isn't something taken away in evasion of the FOIA request? Well, the FOIA request here was made a long time after the materials, the issue, were created. If they allege in the complaint, he knew we were about to file a FOIA request on this and then he took away the documents, then that would tee up this issue. But they haven't teed up that issue at all. The other thing Justice Stevens said in dissent was that he thought that taking away all of these records could plausibly be understood to be evading the FOIA, not a particular FOIA request, but just the FOIA generally. And that apparently didn't trouble the majority. And the majority didn't say, no, that's not true. They just apparently thought that that didn't matter. So we would understand that footnote to allude to a circumstance where it was a specific request. Thank you. Does Mr. Bader have time left? We'll ramp it up to a robust two minutes. In paragraph 47 of the complaint, we specifically allege uncopied OSTP records and private accounts. So that distinguishes this case from the Kissinger case where the Department of State's legal advisor stated in response to the archivist's request that Kissinger had complied with agency retention obligations. By contrast, in this case, in the 2010 memo, OSTP's request was not to use personal email accounts to conduct agency business. And if they did, to forward them to their official accounts suggests indicating that those nongovernmental accounts were subject to federal recordkeeping rules and control. And in addition, the agency's claim that it lacks control over these emails is implausible because agencies have repeatedly produced emails from employees' private accounts in the past. And that's relevant because the government conceded on page 29 of its brief that the withholding analysis focuses on the agency's practical ability or legal authority to disclose the requested record. And so we think that practice of agencies producing emails from employees' nongovernmental accounts is relevant as well. But just to be clear, of course an agency has to turn over materials from a private email account if the agency already has those private emails, right? In this case, we allege that there are uncopied emails in existence in paragraph 47 of our complaint. Right, which means that those emails the agency doesn't have. It would have to do something to get them. But they're within its control under agency theory and under the discovery analogy in Kissinger. I mean, he's the alter ego of the agency. He is the agency, and his control over those work-related records in his personal email account constitutes the agency's control under traditional principles of agency law. So then, if that's true, then in your view, if the agency does ask, we started out by asking you what does the agency have to do? If the agency does ask, let's say the agency does ask, and then the person says no. In your view, has the agency satisfied for you, or are they violating for you? I mean, I can't imagine that that would happen, and they haven't asserted that it was. Yeah, well, just imagine it for humor me, and imagine a situation in which that happens. I don't think so, because the agency has leverage. You know, the special counsel can bring disciplinary action. It's within the  The agency is willing to be fired. He's worried. There's something embarrassing on the personal. He doesn't even want to go down this road. In fact, he's going to quit tomorrow anyway. What does he care? So he says no. Is the agency violating FOIA, or is it complying with FOIA because it asked? I think that this court's precedence in cases like Chambers v. Department of the Interior show that the fact that there may be practical difficulties in complying with the agency doesn't preclude a FOIA violation. So asking is not enough. You have to ask, but that's necessary but not sufficient. You actually have to produce in this context. That's your view, or else the agency is violating FOIA. I think that's a very different case in this one, because I can't imagine that he would refuse to answer and refuse to provide them upon request, and the agency hasn't argued to do that. Would the agency in that situation just carry out the imagination a little further? Would the agency have to institute some sort of legal action to get the documents? To comply with FOIA, I believe that it would. No, but that can't be right, because Kissinger tells us that the agency doesn't have to do that. Well, it depends on when the request is received. If they destroy the documents after the request is received, then under cases like Chambers v. Department of the Interior, and also under the District Court's 1988 decision in Judicial Watch v. Department of Commerce, then there is a FOIA violation. What do you mean? The request in Kissinger was received. The request in Kissinger was received at the time that I think you think is relevant, and yet the one thing we know from Kissinger is that the agency didn't have to institute legal proceedings to try to get the documents. Well, a case was decided on the premise, which I don't think we can at liberty to question, that the only way it could obtain these records was through a retrieval lawsuit, which is a time-consuming and speculative prospect. It didn't give the agency any present control over the documents, much less the ability to do so within FOIA's short deadline. Isn't your answer to Judge Schrinversen that District Court judges handle messes like this all the time, and you may indeed be in a situation where the agency comes in and says, first they said, this guy said no, he's just that kind of a person, and then he burned up everything. Well, the District Court would rule in those circumstances there's no improper withholding, and you've got to have both. There can't be an improper withholding if you've got that kind of a person, he burned everything, and there's nothing else to be found. So, you could be in a situation where the agency ends up giving nothing. It's possible. But my point is, I think your answer to Judge Schrinversen, who knows, the District Court will have to take on each case as it comes and see what the parties are saying. Yes, it's true, Your Honor. But you put it under improper in that situation, not under whether there's a withholding in the first place. And the courts do have the power to enjoin agency officials to stop violating FOIA, like in Union Pacific v. EPA, where the court issued injunction covering individual EPA employees when they violated FOIA. So the court is not without leverage of its own to deal with this. But I guess I have nothing further. Thank you, Your Honors. The case is submitted.
judges: Srinivasan, Edwards, Sentelle